
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BACKCOUNTRY AGAINST DUMPS; et al., | No. 11-56121 |
| Plaintiffs - Appellants, | D.C. No. 3:10-cv-01222-BEN-BGS |
| v. | |
| JIM ABBOTT, California State Director of the U.S. Bureau of Land Management; et al., | MEMORANDUM[*] |
| Defendants - Appellees, | |
| SAN DIEGO GAS & ELECTRIC COMPANY, | |
| Intervenor-Defendant - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted June 7, 2012
Pasadena, California

---

 [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: TROTT and THOMAS, Circuit Judges, and DUFFY, District Judge.**

Backcountry Against Dumps, The Protect Our Communities Foundation, East County Community Action Coalition, and Donna Tisdale (collectively, "BAD") appeal the district court's grant of summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the history of this case, we need not recount it here.

I

We lack authority to consider the merits of BAD's National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-70, and Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1701-87, claims because BAD does not challenge a final agency action subject to judicial review. As the Supreme Court has explained:

> [Generally], two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted). The Administrative Procedure Act ("APA") provides that

_____

** The Honorable Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

-2-

"[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The APA specifies that "[e]xcept where otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section . . . [regardless of any reconsideration], or unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." *Id.*

The Bureau of Land Management ("BLM") is within the Department of the Interior, whose regulations permit parties adversely affected by a BLM decision to appeal to the Interior Board of Land Appeals ("IBLA"). *See* 43 C.F.R. § 4.410(a); *see also* 43 C.F.R. § 2801.10(a). A BLM right-of-way decision becomes effective upon signature and remains effective pending administrative appeal. *See id.*; 43 C.F.R. § 2805.13. The IBLA, in turn, is within the Interior's Office of Hearings and Appeals and "decides finally for the Department appeals to the head of the Department from decisions rendered by Departmental officials relating to . . . [t]he use and disposition of public lands and their resources." 43 C.F.R. § 4.1(b)(2).

The regulations further state both general and specific rules governing Interior appeals. 43 C.F.R. § 4.1(b). "Wherever there is any conflict between one of the general rules . . . and a special rule . . . applicable to a particular type of

-3-

proceeding, the special rule will govern." *Id.* A special rule provides that an IBLA "decision . . . shall constitute final agency action and be effective upon the date of issuance, unless the decision itself provides otherwise." 43 C.F.R. § 4.403 (2009).

The "[f]inality of decision" provision of the regulations provides that "[n]o further appeal will lie in the Department from a decision of the Director or an Appeals Board of the Office of Hearings and Appeals," such as the IBLA. 43 C.F.R. § 4.21(d). In discussing the "[e]ffect of decision pending appeal," the regulations provide that "[a] decision . . . for which a stay is not granted will become *effective* immediately after the Director or an Appeals Board denies or partially denies the petition for a stay, or fails to act on the petition within the time specified in [the regulations]." 43 C.F.R. § 4.21(a)(3) (emphasis added).

The general rule on "[e]xhaustion of administrative remedies," further provides that "[n]o decision which at the time of its rendition is subject to appeal . . . shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. § 704, *unless a petition for a stay of decision has been timely filed and the decision being appealed has been made effective.*" 43 C.F.R. § 4.21(c) (emphasis added). We have observed that subsection (c) deals with exhaustion, not finality. "If taken . . . to touch upon finality of agency action, § 4.21(c)'s requirement that a petition for stay be timely filed would render all actions *not* subject to a petition for

-4-

stay non-final, and thus unreviewable.." *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1064 n.3 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1783 (2011).

In this case, BAD confuses efficacy as finality. Here, the BLM's Record of Decision ("ROD") was effective after the stay pending administrative appeal was denied. However, that stay denial did not transform the ROD into final agency action. Because there was no final agency action on the administrative appeal, the district court lacked jurisdiction to review it.

To be sure, a ROD may constitute final agency action under certain circumstances. *Id.* at 1065. For instance, "where there is no administrative appeal, a [ROD] will become effective and final following the expiration of the appeal period [under] 43 C.F.R. § 4.21(a)(2)." *Id.* However, where there is an appeal and the IBLA grants a stay, the ROD does not become effective and is not the final agency action. *See id.* Therefore, in *National Parks* we reviewed the IBLA's decision, and not the BLM's ROD. *Id.* Additionally, there are circumstances in which the stay order effectively becomes the final agency action, such as in *National Parks* and in *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000).

However, those cases are inapposite to the present circumstances where the stay denial was procedural, and the parties continued to litigate the administrative appeal vigorously on the merits. Had the IBLA summarily denied the stay and rejected the appeal without analysis, then the ROD would have been the final agency action subject to judicial review, as in *Bisson*. But the IBLA reserved judgment on the merits. The district court properly concluded that "43 C.F.R. § 4.403, when applied to the final decision of the IBLA, must rob the ROD of its finality. Otherwise, there would be 'two independent, and potentially conflicting, 'final' agency actions,' which is impermissible."

The district court correctly concluded that it lacked jurisdiction over the NEPA and FLPMA claims because there was no final agency action on the merits of the claims.

## II

To the extent that BAD's challenges to the Eastern San Diego County Resource Management Plan ("RMP") are justiciable, *see, e.g., Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1070-71 (9th Cir. 2002), the claims fail on the

merits.[1]  An "agency need not supplement an EIS every time new information comes to light after [an] EIS is finalized."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 373 (1989).  "To require otherwise would render agency decisionmaking intractable. . . ."  *Id*.

Here, a supplemental EIS was not required because the BLM selected an alternative that was "within the spectrum of alternatives" it had already analyzed and that would not exceed the effects considered by the FEIS.  *Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1048 (9th Cir. 2011,) *cert. denied*, 132 S. Ct. 2439 (2012) (internal quotation marks omitted).  Contrary to BAD's assertion, the cumulative impacts of the project were adequately addressed in the RMP in the context of a programmatic land use plan.  *Res. Ltd. v. Robertson,* 35 F.3d 1300, 1306 (9th Cir. 1993).  A resource management plan is not infirm because it reserves a cumulative impacts analysis of a future plan as part of the NEPA process for the future project.  *Ctr. for Envtl. Law and Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1010 (9th Cir. 2011).

------

[1] The district court dismissed the challenges as non-justiciable.  The government concedes that at least some of the claims may be justiciable under *Or. Natural Desert Ass'n v. U.S. Bureau of Land Mgmt.*, 625 F.3d 1092, 1118-19 (9th Cir. 2010).  However, we may affirm on any ground supported by the administrative record.  *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d 1163, 1170 (9th Cir. 2004).

III

BLM's summary dismissal of BAD's protest did not violate FLPMA. Under BLM's regulations, the right to protest a proposed land use plan is triggered when the EPA publishes notice of the availability of the final EIS for the proposed plan. *See* 43 C.F.R. § 1610.5-2(a)(1). Here, the final EIS for the proposed RMP was made available on December 7, 2007. 72 Fed. Reg. 69226 (Dec. 7, 2007). BAD timely filed a protest in January 2008, and BLM resolved that protest on the merits for most issues on July 25, 2008.

Once the RMP ROD was approved in October 2008, BAD did not have the right to file a second protest letter, because no revised or supplemental EIS submitted to the EPA triggered another protest period. *See* 43 C.F.R. § 1610.5-2(a)(1). Although the regulation makes an exception for amendments not requiring an EIS, *see id.*, the October 2008 RMP ROD was a complete land use plan, not just amendments to an existing plan. Thus, the 2007 proposed RMP new release described the protest procedures. *See* 72 Fed. Reg. at 69226 (mentioning protest procedures). But the letter prefacing the October 2008 decision made no such mention–because the regulations did not provide for a protest period.

Shortly after approving the RMP, BLM separately proposed approval of a site-specific amendment for the transmission line. This site-specific plan

amendment was subject to protest, as explained in the letter prefacing the FEIS and the Federal Register. *See* 73 Fed. Reg. 63012 (Oct. 22, 2008). BAD filed a protest letter on November 17, 2008, stating that they were attempting to "protest the entire RMP" as well as the "entire RMP Amendment." Because the "entire RMP" had already been approved and was not subject to protest, the BLM construed the letter as a challenge to the amendment alone. *See* 40 C.F.R.§ 1610.5-2(a)(2)(iii) (requiring that protest contain a statement of the "part or parts of the plan or amendment being protested"). However, the protest letter primarily consisted of BAD's objections to the 2008 plan. Accordingly, BLM properly dismissed the protest for failure to satisfy the requirements of 43 C.F.R. § 1610.5-2(a)(2).

IV

In sum, we decline to reach the merits of BAD's NEPA and FLPMA challenges to the project ROD because BAD has not challenged a final agency action. BAD's challenges to the RMP fail on the merits. BLM's dismissal of BAD's protest letter was neither arbitrary nor capricious.

**AFFIRMED.**