**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

FARRELL-COOPER MINING
COMPANY,

     Plaintiff - Appellant,

v.                                                                                  No. 16-7061

UNITED STATES DEPARTMENT OF
THE INTERIOR; SALLY JEWELL, as the
Secretary of the U.S. Department of the
Interior; OFFICE OF SURFACE MINING
RECLAMATION AND
ENFORCEMENT; JOSEPH PIZARCHIK,
as the Director of the Office of Surface
Mining Reclamation and Enforcement,

     Defendants - Appellees.
———————————————————

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:16-CV-00012-RAW)**
———————————————————

Stan D. Smith, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock,
Arkansas (Brian A. Pipkin, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,
Little Rock, Arkansas, and Thomas J. McGeady, and Donna L. Smith, Logan & Lowry,
Vinita, Oklahoma, with him on the briefs), for Plaintiff-Appellant.

John Emad Arbab, Attorney, United States Department of Justice, Washington, D.C.
(John Austin, of Counsel, United States Department of Interior, Knoxville, Tennessee,
John C. Cruden, Assistant Attorney General, and Katherine J. Barton, Attorney, United
States Department of Justice, Washington D.C., with him on the brief), for Defendants-
Appellees.
———————————————————

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Under the Administrative Procedure Act ("APA"), agencies may require regulated parties to pursue administrative appeals before seeking review in federal court. But as the Supreme Court explained in <u>Darby v. Cisneros</u>, 509 U.S. 137 (1993), intra-agency review "is a prerequisite to judicial review <u>only</u> when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." <u>Id.</u> at 154. This rule prevents agencies from enforcing initial decisions while a mandatory administrative appeal is pending, which would effectively insulate such decisions from judicial scrutiny.

The Department of the Interior ("DOI") has adopted an administrative appeal requirement for agency actions under the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201 <u>et seq.</u> Following an initial decision by an administrative law judge ("ALJ"), DOI regulations require an adversely affected party to concurrently file an appeal and a petition for stay pending appeal with the Interior Board of Land Appeals ("IBLA") to exhaust administrative remedies. 43 C.F.R. § 4.21(c). However, an ALJ decision is not always rendered inoperative pending appeal. Instead, the IBLA retains discretion to grant or deny the stay. § 4.21(b).

2

We must decide whether the IBLA's denial of a stay renders an ALJ's decision final for purposes of judicial review, notwithstanding a pending IBLA appeal. This question is controlled by Darby: "Agencies may avoid the finality of an initial decision" only "by providing that the initial decision would be inoperative pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review." 509 U.S. at 152 (quotation omitted). Because the ALJ's decision in this case was not rendered inoperative pending appeal to the IBLA, it constitutes final agency action. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's contrary conclusion and remand for further proceedings.

**I**

Under SMCRA, states may submit proposed regulatory programs to DOI and, if approved, obtain regulatory jurisdiction over surface coal mining and reclamation operations. See Farrell-Cooper Mining Co. v. U.S. DOI, 728 F.3d 1229, 1232 (10th Cir. 2013) (citing 30 U.S.C. § 1253(a)). Oklahoma has obtained such approval and has designated the Oklahoma Department of Mines ("ODM") to administer its SMCRA program. Id. (citing 30 C.F.R. § 936.10; Okla. Admin. Code § 460:20-1-4).

Although ODM is primarily responsible for enforcing SMCRA in Oklahoma, DOI retains oversight through its Office of Surface Mining Reclamation and Enforcement ("OSM"). Whenever OSM "has reason to believe that any person is in violation of any requirement of [SMCRA] or any permit condition required by [SMCRA]," it may issue notice to a state regulatory authority. 30 U.S.C. § 1271(a)(1). Unless a state takes "appropriate action" within ten days of the notice

3

or shows "good cause" for failing to do so, OSM orders a federal inspection. Id. These notices are thus referred to as "ten-day notices." If, following federal inspection, OSM determines a permittee is in violation of SMCRA or a permit condition, it issues a notice of violation ("NOV"). § 1271(a)(3). OSM then sets "a reasonable time but not more than ninety days for the abatement of the violation." Id. A failure to abate will result in an OSM order for "cessation of surface coal mining and reclamation operations or the portion thereof relevant to the violation." Id. Further, a mine operator found to be in violation will be prohibited from obtaining new permits for other mines. § 1260(c).

Farrell-Cooper Mining Co. ("Farrell-Cooper") operates the Rock Island Mine in Leflore County, Oklahoma, pursuant to a permit issued by ODM. In July 2012, OSM issued a ten-day notice for the Rock Island Mine, alleging a violation of SMCRA's requirement that mine operators "restore the approximate original contour of the land." § 1265(b)(3). OSM and ODM have been engaged in a long-running dispute regarding the proper interpretation of the approximate original contour ("AOC") standard. ODM responded to the ten-day notice by reiterating its position that OSM has misconstrued the AOC standard and arguing that the Rock Island Mine was compliant. By letter dated April 2, 2013, OSM rejected ODM's response as arbitrary, capricious, or an abuse of discretion. ODM sought informal review of that decision, and OSM affirmed.

Following a federal inspection, OSM issued an NOV to Farrell-Cooper on August 19, 2013. The notice required Farrell-Cooper to abate reclamation activities,

4

submit a new reclamation plan, diligently pursue OSM approval, and then implement the new plan. Farrell-Cooper alleges that complying with the NOV would require it to transfer millions of yards of earth, imposing an "untenable financial burden."

On August 28, 2013, Farrell-Cooper filed a "Conditional Application for Review and Conditional Request for Temporary Relief and Stay" with DOI's Office of Hearings and Appeals ("OHA"). Following lengthy proceedings, an ALJ upheld the NOV on September 30, 2015. On October 19, 2015, Farrell-Cooper filed a notice of appeal and a petition for stay pending appeal with the IBLA. After the ALJ issued an amended decision clarifying his prior order, the IBLA denied a stay, concluding that Farrell-Cooper had not demonstrated a likelihood of success on the merits. That denial—issued December 14, 2015—rendered the ALJ's decision immediately effective. See 43 C.F.R. § 4.21(a)(3) ("A decision, or that portion of a decision, for which a stay is not granted will become effective immediately after . . . [the IBLA] denies or partially denies the petition for a stay."). Accordingly, OSM proceeded to enforce the NOV, issuing a document titled "Modifications of Notice of Violation or Cessation Order" that required Farrell-Cooper to undertake certain abatement measures.

On January 12, 2016, Farrell-Cooper submitted its "Statement of Reasons" and Appellate Brief to the IBLA in the still-pending administrative appeal. The next day, it filed suit in federal court seeking review of the ALJ's decision under 5 U.S.C. § 706 and 30 U.S.C. § 1276, as well as a stay of further enforcement action. In light of the federal lawsuit, OSM filed a motion before the IBLA on January 20, requesting

5

the administrative appeal be held in abeyance. The IBLA granted OSM's motion on February 26. It suspended all further action and briefing in the administrative appeal and requested periodic status reports until "the issuance of a final, non-appealable decision" in the federal case.

DOI then moved to dismiss the federal complaint. The district court granted the motion, concluding it lacked subject matter jurisdiction because the ALJ's decision did not constitute final agency action. Farrell-Cooper moved for reconsideration pursuant to Fed. R. Civ. P. 59(e), but the district court denied relief. Farrell-Cooper then filed a timely notice of appeal and motion to enjoin DOI from enforcing the NOV pending appeal to this court. It submitted an affidavit indicating that as a result of the NOV, the company had already spent nearly $75,000 in engineering, surveying, and permitting costs, and that an additional $3.5 million would be required absent intervention. The district court granted an injunction pending appeal.

## II

We review de novo a district court's dismissal for lack of jurisdiction. Grynberg v. Kinder Morgan Energy Partners, L.P., 805 F.3d 901, 905 (10th Cir. 2015). "Pursuant to the APA, we have jurisdiction to review only final agency actions." McKeen v. U.S. Forest Serv., 615 F.3d 1244, 1253 (10th Cir. 2010) (quotation omitted). "Whether federal conduct constitutes final agency action within the meaning of the APA is a legal question." Colo. Farm Bureau Fed'n v. U.S. Forest Serv., 220 F.3d 1171, 1173 (10th Cir. 2000).

6

## A

The APA provides that "[e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application . . . for an appeal to superior agency authority[,]" "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative." 5 U.S.C. § 704. The Supreme Court has explained that, in passing this provision, "Congress clearly was concerned with making the exhaustion requirement unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available." Darby, 509 U.S. at 146.[1] Accordingly, to avoid turning the statute "into a trap for unwary litigants," the Court has held that parties must pursue only those "intra-agency appeals mandated either by statute or by agency rule." Darby, 509 U.S. at 147.

"The purpose of § [704] was to permit agencies to require an appeal to 'superior agency authority' before an examiner's initial decision became final." Id. at 152.[2] But agencies' power to do so is expressly cabined: "Agencies may avoid the finality of an initial decision" only "by providing that the initial decision would be

---

[1] As the Court noted in Darby, "the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality." Id. at 144. Nevertheless, the two concepts are "closely intertwined," Franks v. Nimmo, 683 F.2d 1290, 1295 (10th Cir. 1982), and many of the authorities cited herein discuss both doctrines. We consider how the distinction between the two doctrines impacts this case in Section II.B.1, infra.

[2] The Court refers to "hearing examiners," the prior term for ALJs. See Eifler v. Office of Workers' Comp. Programs, 926 F.2d 663, 665 (7th Cir. 1991).

'inoperative' pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review." Darby, 509 U.S. at 152. This reading is supported by the provision's legislative history. As the Judiciary Committee explained:

> In no case may appeal to "superior agency authority" be required by rule unless the administrative decision meanwhile is inoperative, because otherwise the effect of such a requirement would be to subject the party to the agency action and to repetitious administrative process without recourse. There is a fundamental inconsistency in requiring a person to continue "exhausting" administrative processes after administrative action has become, and while it remains, effective.

Id. at 147-48 (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 27 (1945)). Accordingly, "an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." Id. at 154.

SMCRA provides that a permittee may seek administrative review of an NOV. 30 U.S.C. § 1275(a). Although the Secretary of the Interior must issue a written decision resolving such a challenge, § 1275(b), the Secretary has designated OHA, staffed by ALJs, to conduct the review process and decide "matters as fully and finally as might the Secretary," 43 C.F.R. § 4.1. Any "appeals to the head of the Department from decisions rendered by Departmental officials relating to . . . the conduct of surface coal mining under [SMCRA]" are to be "decide[d] finally" by the IBLA. § 4.1(b)(2); see also § 4.1101(a) (granting IBLA "the authority to exercise the final decisionmaking power of the Secretary under [SMCRA] pertaining to . . .

8

[a]pplications for review of notices of violation and orders of cessation or modifications").

Under DOI's general regulations for the IBLA, an ALJ decision "will become effective on the day after the expiration of the time during which a person adversely affected may file a notice of appeal unless a petition for a stay pending appeal is filed together with a timely notice of appeal." § 4.21(a)(2).  If an appeal and a petition for stay are filed, "[a] decision, or that portion of a decision, for which a stay is not granted will become effective immediately after the . . . [IBLA] denies or partially denies the petition for a stay, or fails to act on the petition within [45 days]." § 4.21(a)(3).[3]  The regulations further provide that

> [n]o decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. 704, unless a petition for a stay of decision has been timely filed and the decision being appealed has been made effective . . . .

§ 4.21(c).[4]

Few circuit court decisions have applied the rule of Darby to § 4.21.  In Idaho Watersheds Project v. Hahn, 307 F.3d 815 (9th Cir. 2002), abrogated on other grounds by Winter v. Nat'l Res. Def. Council, Inc., 55 U.S. 7 (2008), the court stated

---

[3] In assessing a stay petition, the IBLA considers:  "(i) The relative harm to the parties if the stay is granted or denied, (ii) The likelihood of the appellant's success on the merits, (iii) The likelihood of immediate and irreparable harm if the stay is not granted, and (iv) Whether the public interest favors granting the stay."  § 4.21(b)(1). The party requesting a stay bears the burden of proof.  § 4.21(b)(2).

[4] The term "Appeals Board" refers to the IBLA, the Board of Indian Appeals, and Ad Hoc Boards of Appeals.  § 4.1(b).

that "[i]f the regulations do not allow for the decision to be rendered inoperative pending administrative appeal, then exhaustion of administrative appeals is not required." Id. at 825. Analyzing § 4.21(c), the court held that when the IBLA "does not grant the stay, then the aggrieved party may seek recourse in federal court without further pursuing available administrative remedies." Idaho Watersheds Project, 307 F.3d at 825. In reaching that determination, the court rejected an argument that the agency action was not final. Id. at 828. It explained that the finality inquiry "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury," and concluded that this criterion was satisfied when the initial agency decision became effective. Id. (quoting Darby, 509 U.S. at 144).

A subsequent unpublished Ninth Circuit decision appears to reach the opposite conclusion. In Backcountry Against Dumps v. Abbott, 491 F. App'x 789 (9th Cir. 2012) (unpublished), the court held that § 4.21(c) deals with exhaustion, not finality, and summarily concluded that although the challenged "Record of Decision ('ROD') was effective after the stay pending administrative appeal was denied . . . , that stay denial did not transform the ROD into final agency action." Backcountry Against Dumps, 491 F. App'x at 792. Although the court recognized that an ROD can sometimes be final agency action, it ruled that the denial of a stay pending IBLA review does not render a decision final if "the stay denial was procedural, and the

10

parties continued to litigate the administrative appeal vigorously on the merits." Id.[5] The decision does not acknowledge Idaho Watersheds Project Idaho Watersheds Project or cite Darby. Instead, it relies on National Parks & Conservation Ass'n v. Bureau of Land Management, 606 F.3d 1058 (9th Cir. 2010).

But National Parks & Conservation Ass'n supports Farrell-Cooper's position. There, the court held that plaintiffs could challenge an IBLA decision affirming an ROD, but not the ROD itself. It held the ROD was non-final because the IBLA "granted a stay," which prevented it from ever becoming effective. Id. at 1065 (emphasis omitted). The court recognized that if the IBLA "denies a petition for a stay, a[n ROD] will become effective and final in accordance with 43 C.F.R. § 4.21(a)(3)." Id. That "was the situation in Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172 (9th Cir. 2000)," where, because the IBLA "denied a petition for a stay," the court "reviewed the [ROD] as the final agency action." Id. (emphasis omitted).

Finally, the D.C. Circuit concluded in WildEarth Guardians v. Jewell, 738 F.3d 298 (D.C. Cir. 2013), that the IBLA's denial of a stay makes a decision final and subject to review. Although the court did not discuss Darby or engage in extended analysis, it stated that "WildEarth sought a stay of the ROD pending appeal but the IBLA did not act on WildEarth's motion within 45 days, thus making the ROD the BLM's final agency action in WildEarth's appeal." Id. at 304 (citing 43

---

[5] Whether a pending IBLA appeal undermines the finality of an ALJ's decision notwithstanding Darby is addressed in Section II.B.2, infra.

11

C.F.R. § 4.21(a)(3), (c)).  DOI notes that another party in a related administrative challenge pursued an appeal to the IBLA, which affirmed the ROD in full, and that the two later federal cases were consolidated in the district court.  Id.  However, the D.C. Circuit clearly stated that the ROD—not the subsequent IBLA decision affirming it—was the final agency action subject to judicial review.  Id.

Although circuit court authority is sparse, numerous district court decisions have considered whether § 4.21 is consistent with the rule set forth in Darby.  The vast majority have answered in the negative.  See, e.g., M.L. Johnson Family Props., LLC v. Jewell, Civ. No. 16-6-ART, 2017 U.S. Dist. LEXIS 21087, at *30-44 (E.D. Ky. Feb. 15, 2017) (unpublished) (agency action final under § 4.21 because IBLA failed to rule on stay motion within 45 days); W. Watersheds Project v. U.S. DOI, No. 1:15-cv-00047-REB, 2016 U.S. Dist. LEXIS 136472, at *57 (D. Idaho Sept. 30, 2016) (unpublished) (in part because § 4.21 does not "automatically stay a decision pending appeal," plaintiff "was not required to appeal . . . to the IBLA before seeking judicial review"); Wilderness Workshop v. U.S. BLM, No. 08-cv-00462-REB-MEH, 2008 U.S. Dist. LEXIS 123040, at *7 (D. Colo. Apr. 28, 2008) (unpublished) (holding "if 43 C.F.R. § 4.21(c) properly is read to require exhaustion of administrative remedies, the plaintiffs' failure to exhaust administrative remedies does not preclude them from seeking judicial review" because the "administrative appeal regulations do not provide procedures that render inoperative the decision pending administrative review"); Mont. Wilderness Ass'n v. Fry, 310 F. Supp. 2d 1127, 1138-39 (D. Mont. 2004) (holding plaintiffs are not required to appeal to IBLA

12

prior to seeking judicial review in part because "decisions appealed to the IBLA are not automatically rendered inoperative during the appeal"); Ctr. for Biological Diversity v. U.S. DOI, 255 F. Supp. 2d 1030, 1034-36 (D. Ariz. 2003) ("In this case, the BLM decision became 'final' and subject to judicial review under § 704 once the 45-day time limit for a stay expired."), rev'd on other grounds, 623 F.3d 633 (9th Cir. 2010); San Juan Citizens' All. v. Babbitt, 228 F. Supp. 2d 1224, 1233 (D. Colo. 2002) (in part because § 4.21 does not "provide procedures that render inoperative the decision pending appeal, the plaintiffs were not required to exhaust administrative remedies prior to seeking judicial review"); Or. Nat. Desert Ass'n v. Green, 953 F. Supp. 1133, 1141-42 (D. Or. 1997) (because § 4.21 does not "render the [challenged action] inoperative pending IBLA review," plaintiff "was not required to proceed with its appeal to the IBLA prior to seeking judicial review").  But see Backcountry Against Dumps v. Abbott, No. 10-cv-1222-BEN, 2011 U.S. Dist. LEXIS 90163, at *8-10 (S.D. Cal. Aug. 12, 2011) (unpublished) (concluding Darby did not permit plaintiffs to challenge ROD following IBLA's affirmance, and noting plaintiffs had not amended their complaint to challenge the IBLA decision).

Further, DOI itself has previously stated that the denial of a stay by the IBLA makes an ALJ's decision final agency action.  In David M. Burton, 11 OHA 117 (1995), the Director of OHA ruled that the IBLA possesses authority to stay a BLM decision after the 45-day time limit set forth in § 4.21(b)(4).  11 OHA at 120.  The Director explained that the IBLA's failure to rule upon a stay request within the 45-day window does not bar later action; rather, "[t]he primary consequence of [the

13

agency's delay] is that the decision becomes effective.  In addition, the decision becomes subject to judicial review under 5 U.S.C. § 704 (1994)."  Id. at 125 (citation omitted).

The IBLA reaffirmed that conclusion in M.L. Johnson Family Properties, LLC v. OSM, IBLA 2015-91 (Feb. 19, 2016).  There, M.L. Johnson Family Properties, LLC ("Johnson"), appealed an ALJ decision to the IBLA and filed a petition for stay. Id. at 4.  After the IBLA failed to rule on the stay petition within 45 days, Johnson filed suit in federal district court and moved to dismiss its IBLA appeal for lack of jurisdiction.  Id. at 5.  The IBLA rejected Johnson's assertion that the agency lost jurisdiction over the appeal after commencement of the federal court action.  Id. However, relying on David M. Burton, the IBLA acknowledged that, because the stay petition was not decided within 45 days, the ALJ's decision "became effective and subject to judicial review" pursuant to § 4.21(b)(4) and (c).  M.L. Johnson Family Properties, LLC, IBLA 2015-91, at 7.  Consequently, the IBLA accepted the propriety of federal court review at that time, and, "defer[ing] to the District Court's jurisdiction," granted Johnson's motion to dismiss on the ground that the district court action would dispose of the merits of the pending agency appeal.  Id. at 8-9 & n.2.

We agree with the majority view, which has also been adopted by DOI outside of this lawsuit.  The regulations at issue plainly do not provide that the ALJ's initial decision will be "'inoperative' pending appeal" to the IBLA.  Darby, 509 U.S. at 152 (quoting 5 U.S.C. § 704).  Instead, pursuant to § 4.21(a)(3), the ALJ decision that

14

Farrell-Cooper seeks to challenge became effective when the IBLA denied a stay. The Court in Darby unambiguously explained that under these circumstances, "the initial decision becomes final and the aggrieved party is entitled to judicial review." 509 U.S. at 152.

## B

In resisting this conclusion, DOI raises two main arguments: (1) Darby concerned exhaustion rather than finality; and (2) Farrell-Cooper's pending IBLA appeal renders the ALJ's decision non-final even if review would otherwise be permissible. We reject both contentions.

## 1

DOI claims that Darby does not control because that case concerned exhaustion rather than finality. See 509 U.S. at 144. The agency argues that in considering finality, we must look to the principles set forth in Bennett v. Spear, 520 U.S. 154 (1997). In that case, the Court held:

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process[]—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

Id. at 177-78 (citations and quotations omitted).

The ALJ decision that Farrell-Cooper seeks to challenge quite clearly occasioned legal consequences. Following the IBLA's denial of a stay, the NOV became effective as a result of the ALJ ruling. § 4.21(a)(3). Farrell-Cooper contends

15

that it spent approximately $73,800 to develop a new AOC plan as required by the NOV, and that implementation of that new plan would cost $3.5 million. If Farrell-Cooper fails to comply, OSM could order cessation of operations and refuse to issue the company permits for other mines. See 30 U.S.C. §§ 1271(a)(3), 1260(c).

But DOI argues that the ALJ decision did not "mark the consummation of the agency's decisionmaking process." Bennett, 520 U.S. at 178 (quotation omitted). This argument carries some intuitive force. With an appeal pending before the IBLA, it cannot be said that DOI has completed its decisional process. Nevertheless, this potential defect does not undermine our conclusion that the ALJ's decision is subject to judicial review.

The Bennett opinion states that decisions are not final "[a]s a general matter" unless they mark the consummation of agency proceedings. Id. at 177-78. But it does not consider the issue presented in this case: whether an ALJ's decision that has become effective is nevertheless non-final if regulations require an intra-agency appeal. That contingency is addressed directly in Darby, which explains that an appeal to "superior agency authority" is a prerequisite to judicial review only when an administrative action is made inoperative pending intra-agency review. 509 U.S. at 154. Nothing in Bennett suggests that the Court intended to impliedly overrule this more specific rule announced in Darby just a few years earlier.

Further, although the Darby decision primarily dealt with exhaustion, it also explicitly considered finality. It stated that "[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue

16

that inflicts an actual, concrete injury." Id. at 144 (quotation omitted) (emphasis added). The ALJ's decision clearly qualifies under that standard: It definitively upheld the NOV and, as described above, subjected Farrell-Cooper to real-world consequences following denial of a stay by the IBLA. The Darby Court also explained that "[a]gencies may avoid the finality of an initial decision" only by making it inoperative pending appeal. Id. at 152. If an agency does not do so, the "initial decision becomes final and the aggrieved party is entitled to judicial review." Id. Although these statements may have constituted dicta, "this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings." Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996).

In describing the general rule that an agency action is not final until the agency has completed its decision-making process, the Bennett opinion essentially presumed compliance with § 704. That is, the Court assumed that agencies would not require an intra-agency appeal without rendering the initial decision inoperative. When that assumption fails, Darby instructs that the initial decision is final and subject to judicial review. 509 U.S. at 152.[6]

_____

[6] DOI argues that § 4.21(c) deals with exhaustion rather than finality, and that courts must defer to an agency's interpretation of its own regulations. See Auer v. Robbins, 519 U.S. 452, 461-62 (1997). Although Farrell-Cooper has argued that § 4.21(c) defines final agency action to include the ALJ decision at issue—and that construction certainly appears consistent with the plain text of the regulation—we do not rest our decision on that argument (and thus do not reach the question of whether the Bennett test applies when regulations independently define finality). Instead, we conclude that the legal effect of denying a stay is that the ALJ decision becomes final and subject to review under Darby regardless of whether § 4.21(c) independently defines final agency action. To the extent DOI challenges the conclusion that

17

DOI also contends that even if the ALJ's decision were otherwise final, Farrell-Cooper's pending IBLA appeal makes it non-final. In ICC v. Brotherhood of Locomotive Engineers, 482 U.S. 270 (1987), the Court stated that § 704 has been interpreted "merely to relieve parties from the requirement of petitioning for rehearing before seeking judicial review (unless, of course, specifically required to do so by statute), but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." Id. at 284-85 (citation omitted). And in Stone v. INS, 514 U.S. 386 (1995), the Court noted that if a "party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary." Id. at 392. Accordingly, the "pendency of reconsideration renders the underlying decision not yet final, and . . . a party who has sought rehearing cannot seek judicial review until the rehearing has concluded." Id.

But in contrast to this case, both Stone and Locomotive Engineers involved non-mandatory administrative appeal proceedings. See 514 U.S. at 390 (citing 8 U.S.C. § 1105a(a)(1) (1988 ed. & Supp. V), which provided that "a petition for review [of a final deportation order] may be filed not later than 90 days after the date of the issuance of the final deportation order" (emphasis added)); 482 U.S. at 278 (citing 49 U.S.C. § 10327(g) (1987), which provided that interested parties "may

§ 4.21(c) renders an ALJ decision effective or operative, we would not owe that interpretation deference because it would be "plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945).

petition to reopen and reconsider an action of the Commission" (emphasis added)). The Court in Stone specifically referred to the scenario in which a "party elects to seek a rehearing." 514 U.S. at 392. And several of our sibling circuits have described the rule announced in these cases as applying to "optional" intra-agency appeals. See Bangura v. Hansen, 434 F.3d 487, 501 (6th Cir. 2006) (plaintiff's "decision to take his optional appeal rendered the earlier decision non-final"); Acura of Bellevue v. Reich, 90 F.3d 1403, 1407 (9th Cir. 1996) (the "exercise of an optional appeal to a Department ALJ renders the initial Administrator's decision nonfinal for purposes of judicial review under the APA").

In this case, we are not confronted with optional agency review. Under § 4.21(c), titled "Exhaustion of administrative remedies," "[n]o decision which at the time of its rendition is subject to appeal to the . . . [IBLA] shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. 704." The regulation creates an exception if "a petition for a stay of decision has been timely filed and the decision being appealed has been made effective." Id. However, a "petition for a stay pending appeal" to the IBLA must be "filed together with a timely notice of appeal." § 4.21(a)(2); see also Department Hearings and Appeals Procedures, 58 Fed. Reg. 4,939, 4,941 (Jan. 19, 1993) (noting the word "together" in revised regulation "makes clear that the petition for a stay is to be filed together with a timely notice of appeal"). Thus, the plain text of § 4.21 requires a party to appeal to the IBLA prior to seeking judicial review.

19

Our circuit precedent is in accord. In <u>Silverton Snowmobile Club v. United States Forest Service</u>, 433 F.3d 772 (10th Cir. 2006), plaintiffs filed suit after submitting an appeal to the IBLA but before that appeal was decided. <u>Id.</u> at 787. We concluded that "plaintiffs plainly had not exhausted their administrative remedies when they filed their complaint in the district court." <u>Id.</u> (citing § 4.21(c)).[7] Several district courts have similarly ruled that an IBLA appeal is an exhaustion requirement. <u>See, e.g.</u>, <u>Shasta Res. Council v. U.S. DOI</u>, 629 F. Supp. 2d 1045, 1051 (E.D. Cal. 2009) ("A plaintiff exhausts his or her administrative remedies under these regulations by petitioning the BLM and appealing its decision to the IBLA." (quotation omitted) (citing § 4.21 (b), (c))); <u>BWD Props. 2, LLC v. Franklin</u>, No. 2:06-cv-01499-BES-PAL, 2007 U.S. Dist. LEXIS 73664, at * 7 (D. Nev. Sept. 27, 2007) (unpublished) ("[E]xhaustion of administrative remedies only occurs upon disposition of such an appeal by the IBLA." (citing § 4.21(c))); <u>Or. Nat. Desert Ass'n</u>, 953 F. Supp. at 1141 ("Here, the Department of Interior regulations do require exhaustion, 43 C.F.R. § 4.21(c), but the regulation does not render the River Plan

---

[7] Our decision in <u>Silverton Snowmobile Club</u> did not consider whether, under <u>Darby</u>, an agency may make an initial decision effective while simultaneously insulating the decision from judicial review by requiring additional administrative steps. Accordingly, <u>Silverton Snowmobile Club</u> does not establish binding precedent as to that question. <u>See</u> <u>UFCW, Local 1564 of N.M. v. Albertson's, Inc.</u>, 207 F.3d 1193, 1199 (10th Cir. 2000) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quotation omitted)).

inoperative pending IBLA review.")[8] Accordingly, failure to meet the exhaustion requirements set forth in § 4.21(c) will lead to dismissal if the rule set forth in Darby is not applied.

We are thus presented with a very different scenario than those at issue in Stone and Locomotive Engineers. In those cases, plaintiffs who could have immediately challenged agency action in federal court instead elected to pursue additional administrative remedies. Farrell-Cooper had no such option. It would have faced dismissal for failure to exhaust had it filed suit in federal court immediately after the ALJ issued his decision. But in DOI's view, Farrell-Cooper also faces dismissal under Stone and Locomotive Engineers so long as its mandatory appeal to the IBLA is pending. Yet the agency maintains its authority to enforce the ALJ decision in the interim. Thus, DOI's view is that the regulatory scheme makes immediate challenge of an effective initial decision impossible—a result that is plainly inconsistent with Darby. To avoid such inconsistency, we conclude that the doctrine set forth in Stone and Locomotive Engineers is limited to circumstances in which a plaintiff pursues optional administrative review. See Bangura, 434 F.3d at 501; Acura of Bellevue, 90 F.3d at 1407.

DOI also argues that even if Farrell-Cooper was required to file a notice of appeal with the IBLA, it could have moved to dismiss that proceeding prior to filing

_____

[8] As with Silverton Snowmobile Club, neither Shasta Resources Council nor BWD Properties 2, LLC considered whether the exhaustion requirement was consistent with Darby. In Oregon Natural Desert Ass'n, however, the court held that because the facial exhaustion requirement violated Darby, an IBLA appeal was not required prior to judicial review. 953 F. Supp. at 1141-42.

this lawsuit. See 43 C.F.R. § 4.1111 ("Any party who initiated a proceeding before OHA may seek to withdraw by moving to dismiss at any stage of a proceeding and the [ALJ] or the [IBLA] may grant such a motion."). But such a dismissal is not self-executing. In promulgating § 4.1111, DOI explained that it used the phrase "seek to" in the regulation specifically "to clarify the fact that the granting of such a motion is not automatic, but rather, is in the discretion of the [ALJ] or the [IBLA]." Office of the Secretary of the Interior, 43 Fed. Reg. 34,376, 34,378 (Aug. 3, 1978). Accordingly, if dismissal of an IBLA appeal were a prerequisite to suit, a plaintiff's access to federal court would be wholly subject to the discretion of agency officials. But see Kucana v. Holder, 558 U.S. 233, 237 (2010) (noting the presumption against "plac[ing] in executive hands authority to remove cases from the Judiciary's domain"). Further, the initial decision would be effective while the IBLA considered whether to dismiss the appeal, which would again contravene Darby.

In support of its claim that dismissal of an IBLA appeal is required, DOI argues that such dismissals occurred in some of the above-cited cases permitting judicial review. But it does not appear that the plaintiffs in any of those cases dismissed their IBLA appeals prior to filing suit. In Idaho Watersheds Project, the IBLA appeal was pending when suit was filed, and the plaintiff dismissed it only after BLM argued failure to exhaust. See Idaho Watersheds Project v. Hahn, No. CV-97-0519-S-BLW, slip op. at 8 (D. Idaho Feb. 11, 1998) (Docket No. 65). Similarly, in M.L. Johnson Family Properties, LLC, the plaintiff filed suit before moving to dismiss the agency proceedings. See 2017 U.S. Dist. LEXIS 21087, at *4;

22

see also M.L. Johnson Family Props., LLC, IBLA 2015-91, at 5. Because finality

and exhaustion must be considered as of the time a complaint is filed, see Silverton

Snowmobile Club, 433 F.3d at 787, these cases do not support DOI's position.

Moreover, other decisions have held that agency action was subject to judicial review

even though an appeal remained pending before the IBLA and plaintiffs had not

moved to dismiss. Ctr. for Biological Diversity, 255 F. Supp. 2d at 1033, 1034-35;

Or. Nat. Desert Ass'n, 953 F. Supp. at 1141.[9]

    We acknowledge that an IBLA appeal and a federal lawsuit proceeding on

parallel tracks is not ideal and may undermine judicial and administrative efficiency,

which the exhaustion doctrine is intended to protect. See Woodford v. Ngo, 548 U.S.

81, 89 (2006). Despite the practical difficulties, however, this scenario is not novel.

As the Supreme Court has explained, "[i]n multi-party proceedings . . . some may

seek judicial review and others may seek administrative reconsideration. That both

tribunals have jurisdiction does not mean, of course, that they will act at cross

purposes." Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 541 (1970)

(quotation omitted).

_____

    [9] As noted above, an unpublished Ninth Circuit order ruled—without citing
Darby—that a BLM decision did not become final even after the IBLA denied a stay.
Backcountry Against Dumps, 491 F. App'x at 792. It also stated that several of the
district court decisions applying Darby to § 4.21(c) were "inapposite to the present
circumstances where the stay denial was procedural, and the parties continued to
litigate the administrative appeal vigorously on the merits," and it suggested that a
different result would be reached "[h]ad the IBLA summarily denied the stay and
rejected the appeal without analysis." Id. The decision does not discuss Stone or
Locomotive Engineers. To the extent it turns on the fact that an IBLA appeal was
pending at the time plaintiffs filed suit, we do not find the decision persuasive.

At least one district court has stayed a case pending resolution of an IBLA appeal. See Ctr. for Biological Diversity, 255 F. Supp. 2d at 1036-38. And in light of our present decision, Farrell-Cooper may elect to dismiss its IBLA appeal. We do not suggest that such steps are required. Because the IBLA has suspended consideration of the administrative appeal pending a final decision in federal court, there is little reason to think that agency resources will be wasted while the federal case advances or that the IBLA will issue a decision while this case is pending. See Backcountry Against Dumps, 491 F. App'x at 792 (expressing concern that an IBLA ruling could result in "two independent, and potentially conflicting, final agency actions, which is impermissible" (quotations omitted)). But see Or. Nat. Desert Ass'n v. McDaniel, 751 F. Supp. 2d 1145, 1149 (D. Or. 2010) (noting one could conclude that "the IBLA's subsequent decision on the merits of [an] appeal super[s]edes the BLM decision as the final agency action"). We expect that the parties, the IBLA, and the district court will be able to proceed in an efficient and cooperative manner.

## III

For the foregoing reasons, we conclude that the ALJ's decision became final and subject to judicial review following the IBLA's denial of a stay. We **REVERSE** the district court's dismissal of Farrell-Cooper's complaint and **REMAND** for further proceedings consistent with this opinion.