**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FARRELL-COOPER MINING COMPANY,

       Plaintiff–Appellant,

v.

U.S. DEPARTMENT OF THE INTERIOR;
OFFICE OF SURFACE MINING,
RECLAMATION AND ENFORCEMENT;
SALLY JEWELL, as the Secretary of the
U.S. Department of the Interior[*]; JOSEPH
PIZARCHIK, as the Director of the Office of
Surface Mining, Reclamation and
Enforcement,

       Defendants–Appellees,

and

OKLAHOMA DEPARTMENT OF MINES,

       Defendant–Appellant.

------------------------------------------------------------

INTERSTATE MINING COMPACT
COMMISSION; WEST VIRGINIA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION; COMMONWEALTH OF

Nos. 12-7045 & 12-7048

---

[*] Pursuant to Fed. R. App. P. 42(3)(c), as of April 12, 2013, Kenneth Salazar is replaced by Sally Jewell as the Secretary of the U.S. Department of Interior.

VIRGINIA; STATE OF ALASKA,

    Amici Curiae.

---

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:11-CV-00428-FHS)**

---

Stan D. Smith, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, Arkansas (Brian A. Pipkin, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, Arkansas; Thomas J. McGeady and Donna L. Smith, Logan & Lowry, Vinita, Oklahoma, with him on the briefs) for the Plaintiff-Appellant.

P. Clayton Eubanks, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma (Mark Secrest, Chief Counsel, Oklahoma Department of Mines, Oklahoma City, Oklahoma, with him on the briefs) for the Defendant-Appellant.

Katherine J. Barton, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., (Ignacia S. Moreno, Assistant Attorney General, and Elizabeth A. Peterson, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C.; and John Austin, U.S. Department of the Interior, Office of the Solicitor, Knoxville, Tennessee, with her on the briefs) for the Defendants-Appellees.

Joseph L. Jenkins, Senior Counsel, West Virginia Department of Environmental Protection, Charleston, West Virginia; Kenneth T. Cuccinelli, II, Attorney General of Virginia, E. Duncan Getchell, Jr., Solicitor General of Virginia, Office of the Attorney General, Richmond, Virginia; Michael C. Geraghty, Attorney General of Alaska, Alaska Department of Law, Juneau, Alaska; and Gregory E. Conrad, Executive Director, Interstate Mining Compact Commission, filed an amicus curiae brief for Interstate Mining Compact Commission, West Virginia Department of Environmental Protection, Commonwealth of Virginia and State of Alaska.

---

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Plaintiff-Appellant Farrell-Cooper Mining Company ("Farrell-Cooper") and Defendant-Appellant Oklahoma Department of Mines ("ODM") appeal the district court's dismissal of their claims for declaratory and injunctive relief against the Department of Interior; the Secretary of the Interior; the Office of Surface Mining, Reclamation and Enforcement ("OSMRE"); and the Director of OSMRE (collectively, "Federal Appellees"). We dismiss this appeal as unripe.

**I**

This dispute concerns reclamation requirements contained in surface coal mine permits for Farrell-Cooper's Liberty Mine #5 and Liberty Mine #6. The terms and administration of such permits are governed by the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201 et seq.

**A**

SMCRA provides for "a program of cooperative federalism that allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 289 (1981). Under SMRCA, states may submit proposed regulatory programs to the Secretary of the Interior for approval. § 1253(a). Once a state has obtained approval of its program, it is said to have achieved "primacy." State laws and regulations implementing SMCRA "become operative for the regulation of surface coal mining, and the State officials administer the program." Bragg

-3-

v. W. Va. Coal Ass'n, 248 F.3d 275, 288 (4th Cir. 2001). States have "exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" within their borders, § 1253(a), subject to three statutory exceptions, see § 1271(a)-(c).

Two of these exceptions are relevant to this case. Section 1271(a) addresses individual violations by a specific permittee, authorizing OSMRE to issue a notice to a state regulatory authority if it "has reason to believe that any person is in violation of . . . any permit condition required by this chapter." § 1271(a)(1). Upon receipt of this "ten-day notice" ("TDN"), a state must "take appropriate action to cause said violation to be corrected or . . . show good cause" why the violation has not been corrected within ten days. § 1271(a)(1); see also Coteau Props. Co. v. Dep't of Interior, 53 F.3d 1466, 1473 (8th Cir. 1995); 30 C.F.R. § 842.11(b)(1)(ii)(B)(1). Federal regulations define "good cause" to include circumstances in which "[u]nder the State program, the possible violation does not exist." § 842.11(b)(1)(ii)(B)(4)(i). If a state fails to take appropriate action or show good cause, SMCRA requires that OSMRE "order Federal inspection." § 1271(a)(1); see also § 842.11(b)(1)(ii)(B)(1). Federal inspections that indicate a permittee is "in violation of any requirement of [SMCRA] or any permit condition required by [SMCRA,]" not accompanied by imminent danger to the public, result in the issuance by OSMRE of a notice of violation ("NOV") to the permittee. § 1271(a)(3). The NOV sets "a reasonable time but not more than ninety days for the abatement of the violation and provid[es] opportunity for public hearing." Id.

Section 1271(b) applies if OSMRE "has reason to believe" that a state regulatory

-4-

agency has failed to enforce its state program effectively. § 1271(b). Under this provision, OSMRE must "after public notice and notice to the State, hold a hearing . . . in the State within thirty days of such notice." Id. "During the period beginning with such public notice and ending when such State satisfies [OSMRE] that it will enforce" SMCRA, enforcement authority is transferred to OSMRE. Id.

**B**

Both Liberty #5 and Liberty #6 are located in Haskell County, Oklahoma. Oklahoma is a primacy state, and ODM is responsible for carrying out the state's approved SMCRA program. 30 C.F.R. § 936.10; Okla. Admin. Code § 460:20-1-4. ODM approved Farrell-Cooper's permit application for Liberty #5 in 2005; in 2009, it approved the Liberty #6 permit application.

Farrell-Cooper alleges that both applications included "detailed maps showing the pre-mining contour of the areas and then maps showing the proposed post-mining contour and slopes." It contends that, after completing operations at each mine, it began reclamation at both sites in full conformity with all permit specifications.

In an August 2010 report, OSMRE raised concerns regarding the reclamation of Liberty #5 and Liberty #6, particularly the surface contour requirements. SMCRA requires mine operators "to restore the approximate original contour of the land[,]" subject to certain exceptions. § 1265(b)(3). "Approximate original contour" is defined in both federal and Oklahoma regulations as

that surface configuration achieved by backfilling and grading of the mined

-5-

areas so that the reclaimed area, including any terracing or access roads, closely resembles the general surface configuration of the land prior to mining and blends into and complements the drainage pattern of the surrounding terrain, with all highwalls, spoil piles and coal refuse piles eliminated.

30 C.F.R. § 701.5; Okla. Admin. Code § 460:20-3-5.

On January 10, 2011, OSMRE issued a TDN for Liberty #6 stating that, based on federal inspections, the agency had reason to believe the mine failed to achieve approximate original contour. An analogous TDN issued on January 12, 2011 for Liberty #5 raised similar concerns regarding the reclamation topography at that site.

ODM responded to both TDNs, contending inter alia that the determinations were premature given ongoing discussions between ODM and OSMRE regarding the definition of approximate original contour. In its answers, OSMRE's Tulsa Field Office stated that ODM's responses did not address the violations alleged and had not shown good cause for failure to take enforcement action. It therefore concluded that both of ODM's responses were arbitrary, capricious, and abuses of discretion.

ODM subsequently requested that the OSMRE Regional Director review and reverse the field office's decisions. On November 10, 2011, in an eight-page response, the Regional Director affirmed the field office's decision with respect to Liberty #5. OSMRE issued an NOV for that mine on December 1, 2011. On December 11, 2011, the OSMRE Regional Director denied ODM's informal appeal of the TDN issued for Liberty

#6.[1]  OSMRE issued an NOV for Liberty #6 on May 18, 2012.

Farrell-Cooper applied for administrative review before the Department of Interior's Office of Hearings and Appeals to contest both NOVs.  According to publicly available information from the Department of Interior docket, filings in the appeal of the Liberty #5 NOV have occurred at least as recently as December 28, 2012.[2]  See Farrell-Cooper Mining Co. v. Office of Surface Mining Reclamation & Enforcement, No. DV-2012-1-R (Dep't of Interior Dec. 28, 2012) (denying motion to bar admission of exhibits and witnesses).

## C

In the midst of these administrative deliberations, Farrell-Cooper filed suit against the Federal Appellees in the United States District Court for the Eastern District of Oklahoma.  It submitted an amended complaint on January 6, 2012, after OSMRE had issued an NOV against Liberty #5 and denied ODM's informal appeal of the TDN issued for Liberty #6, but prior to OSMRE's issuance of an NOV against Liberty #6.  The amended complaint named ODM as an additional defendant and requested a declaratory judgment ruling that ODM had authority over Farrell-Cooper's permits.  It also asked for an injunction precluding OSMRE from enforcing the NOV issued against Liberty #5 or

---

[1] The denial is not in the record, but Farrell-Cooper and OSMRE agree that it occurred.

[2] A court may "take judicial notice of . . . facts which are a matter of public record."  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

-7-

proceeding further in the TDN process against Liberty #6, among other requested relief. In a January 31, 2012 answer and cross-claim, ODM also requested a declaratory judgment stating that ODM had "sole and exclusive permitting authority" under Oklahoma's SMCRA program, among other relief.

On May 14, 2012, the district court dismissed the action. Concluding that "[t]he essence of plaintiff's claim is an attack on an administrative action by the federal defendants taken in accordance with the [Department of Interior's] regulations . . . [which] amounts to an attack on the regulations themselves," the court held that it lacked subject matter jurisdiction under 30 U.S.C. § 1276(a)(1), which mandates that promulgation of national rules or regulations under SMCRA be subject to judicial review in the United States District Court for the District of Columbia Circuit. Farrell-Cooper and ODM timely appealed.

## II

The Federal Appellees assert two alternative bases for affirmance: the district court properly concluded that it lacked jurisdiction under § 1276(a)(1); or appellants' claims are not ripe for review. "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 431 (2007) (quotation omitted). Because we conclude that appellants' claims are not ripe, we decline to address whether the district court had jurisdiction under § 1276(a)(1).

Although ripeness was raised below and fully briefed by the parties, the district

court did not address it.  "[R]ipeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993).  Accordingly, "we may decide the issue even when it was not reached by the district court."  S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1157-58 (10th Cir. 2013).

Appellants seek injunctive and declaratory judgment remedies that "are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."  Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  Ripeness doctrine prevents courts from "entangling themselves in abstract disagreements" and interfering in agency policy until "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Id. at 148-49; see also Rio Grande Silvery Minnow v. Keys, 333 F.3d 1109, 1120 (10th Cir. 2003), vacated as moot, 355 F.3d 1215 (10th Cir. 2004) ("The case or controversy requirement of Article III admonishes federal courts to avoid premature adjudication . . . ." (quotation omitted)).

In assessing whether a claim is ripe for judicial resolution, we apply a functional approach under which we evaluate "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."  Abbott Labs., 387 U.S. at 149.  In order to determine the fitness of issues for review, we may consider "whether judicial intervention would inappropriately interfere with further administrative action"

and "whether the courts would benefit from further factual development of the issues presented." Sierra Club v. Dep't of Energy, 287 F.3d 1256, 1262-63 (10th Cir. 2002).[3]

"[C]ases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." Abbott Labs, 387 U.S. at 149. Agency action is final when it "marks 'the consummation of the agency's decisionmaking process'" and is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'" Palma, 707 F.3d at 1158 (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)). In this case, Farrell-Cooper has filed an application for review of the Liberty #5 NOV with the Department of Interior's Office of Hearings and Appeals. Claims asserted in that application echo those alleged in the amended complaint filed with the district court: the application attaches and incorporates by reference Farrell-Cooper's amended complaint. This application for review was filed on January 12, 2012, after Farrell-Cooper's submission of its first amended complaint. Publicly available documents demonstrate that filings were made in this appeal as recently as December 28, 2012. See Farrell-Cooper Mining Co., No. DV-2012-1-R (Dec. 28, 2012) (denying motion to bar admission of exhibits and witnesses). Thus, nearly six months after the

---

[3] We have also articulated the factors relevant for evaluating ripeness as: "(1) whether the issues involved are purely legal, (2) whether the agency's action is final, (3) whether the action has or will have an immediate impact on the petitioner, and (4) whether resolution of the issue will assist the agency in effective enforcement and administration." Los Alamos Study Grp. v. Dep't of Energy, 692 F.3d 1057, 1065 (10th Cir. 2012) (quotation omitted). "[T]he two tests essentially include all the same considerations." Id. at 1065 n.1 (quotation and alteration omitted).

appellants in this case filed their notices of appeal, Farrell-Cooper's administrative appeal was ongoing. "The plaintiff bears the burden of providing evidence to establish that the issues are ripe," Coal. for Sustainable Res. v. Forest Serv., 259 F.3d 1244, 1249 (10th Cir. 2001), yet Farrell-Cooper has not made any statements or provided any submissions indicating that the administrative appeal has been resolved.

Because the agency actions challenged in this appeal are subject to ongoing administrative review, the Department of Interior could well agree with Farrell-Cooper that OSMRE acted unlawfully and vacate each action. Our review would "disrupt the administrative process," Bell v. New Jersey, 461 U.S. 773, 779 (1983), and thus we conclude that "there has not been a consummation of the agency's decisionmaking process sufficient to support litigation of the issue [Farrell-Cooper] seeks to raise." Palma, 707 F.3d at 1159.

Farrell-Cooper's amended complaint also contests OSMRE's treatment of its Liberty #6 mine. At the time Farrell-Cooper's first amended complaint was filed, OSMRE had issued a TDN with respect to Liberty #6. OSMRE later issued an NOV against Liberty #6, but only after the district court dismissed Farrell-Cooper's suit; the Liberty #6 NOV was therefore not incorporated into Farrell-Cooper's amended complaint. And because Farrell-Cooper has also sought administrative review of the Liberty #6 NOV before the Department of the Interior, we conclude that OSMRE has not engaged in a final agency action with respect to Liberty #6 for the same reasons

-11-

discussed above.[4]

We also note that this court would "benefit from further factual development of the issues presented." Sierra Club, 287 F.3d at 1263. Farrell-Cooper argues that the district court incorrectly concluded that its claims challenge the validity of SMCRA rules or regulations. Such claims must be brought in the U.S. District Court for the District of Columbia under § 1276(a)(1). The company asserts that the district court had jurisdiction because it alleges only that individual OSMRE actions were not in accordance with law. According to Farrell-Cooper, within ten days ODM answered the TDNs issued against Liberty #5 and Liberty #6 by informing OSMRE that the "[approximate original contour] as allowed under the permits comported" with Oklahoma requirements. Farrell-Cooper contends that this statement was an assertion of "good cause" that prohibited OSMRE from inspecting its mines, issuing TDNs, and issuing NOVs under § 1271(a). See § 1271(a)(1) (requiring federal inspection if within ten days of notification, state fails to "take appropriate action to cause said violation to be corrected or . . . show good cause" why violation has not been corrected); § 842.11(b)(1)(ii)(B)(4)(i) (defining "good cause" as occurring if "[u]nder the State program, the possible violation does not exist").

_____

[4] Federal Appellees argue that the TDN issued against Liberty #6, which was incorporated into Farrell-Cooper's first amended complaint, is "not subject to direct legal challenge" because unlike NOVs, TDNs "cause no legally cognizable harm to Farrell-Cooper or ODM." According to the Federal Appellees, "[o]nly the Liberty #5 NOV is at issue in this action, because it is the only NOV that was issued prior to the filing of Farrell-Cooper's first amended complaint and that was incorporated therein." We need not reach this argument because we conclude that Farrell-Cooper and ODM's claims, as they relate to Liberty #6, are not ripe for our review.

Farrell-Cooper also argues that OSMRE was precluded from acting under § 1271(b) and retracting enforcement authority wholesale from Oklahoma because the agency did not comply with notice and hearing prerequisites.

To substantiate its claim that ODM notified OSMRE that the "[approximate original contour] as allowed under the permits comported" with Oklahoma requirements, Farrell-Cooper cites two exhibits attached to its amended complaint. Neither of these exhibits, however, makes such a statement. Nor does either reference "good cause" or allege that "[u]nder the [Oklahoma] program, the possible violation[s] [do] not exist." § 842.11(b)(1)(ii)(B)(4)(i). Both exhibits are letters from ODM to OSMRE written in response to the issuance of TDNs against Liberty #5 and Liberty #6, but the letters discuss only the general, underlying dispute between ODM and OSMRE over the approximate original contour definition. For a "response to the specifics of this TDN," each letter directs the reader to ODM's "detailed response" to a 2010 report on the approximate original contour definition, without any clarification of ODM's position or suggestion that this report asserted "good cause" why the alleged violations had not been corrected. § 1271(a)(1). Appellants have not pointed to the location of this report in the record, and our own search, like a "pig[] hunting for truffles," has not uncovered it. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). According to the Federal Appellees, ODM did not assert a "good cause" for failure to address the alleged violations at Liberty #5 and Liberty #6.

Even if ODM notified OSMRE that the "[approximate original contour] as

-13-

allowed under the permits comported" with Oklahoma requirements, as Farrell-Cooper contends in its complaint, it does not necessarily follow that "[u]nder the [Oklahoma] program, the possible violation[s] [do] not exist." § 842.11(b)(1)(ii)(B)(4)(i). Farrell-Cooper's permit specifications may comply with Oklahoma requirements, but nevertheless there may have been permit violations at their mines. Although Farrell-Cooper repeatedly alleges it has complied with its permit conditions, its complaint does not assert that ODM responded to OSMRE's TDNs by stating that there were no violations at Liberty #5 and Liberty #6—the legally operative exchange. Accordingly, the text of Farrell-Cooper's complaint does not clearly allege that ODM ever asserted "good cause," as the company now argues.[5]

Thus, Farrell-Cooper's complaint and attached exhibits do not establish a crucial and disputed allegation underlying Farrell-Cooper's claim.[6] The possibility that this issue

---

[5] In requesting informal review of the Liberty #5 and Liberty #6 TDNs on March 9, 2011, ODM stated that it "does not agree with [OSMRE's] conclusion regarding whether or not [the permit numbers for Liberty #5 and Liberty #6] meet[] [approximate original contour]." As with Farrell-Cooper's allegations, it is unclear whether the agency is referring to the permit requirements or the actual reclamation. Moreover, this exchange took place nearly two months after OSMRE's issuance of the TDNs against Liberty #5 and Liberty #6. See § 1271(a)(1) (the state authority must respond "within ten days after notification").

[6] "We review the issue of ripeness de novo." Roe No. 2 v. Ogden, 253 F.3d 1225, 1231 (10th Cir. 2001). Because the district court disposed of this case on a motion to dismiss, "we assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009). We "may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted). "[F]actual allegations that contradict

Continued . . .

-14-

may be clarified in the course of administrative review further supports our conclusion that this appeal is not ripe for adjudication. See Sierra Club v. Yeutter, 911 F.2d 1405, 1417 (10th Cir. 1990) ("Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review.").

Farrell-Cooper will not suffer hardship from delayed review. Pertinent administrative review of the Liberty #5 NOV has stayed all OSMRE enforcement. Farrell-Cooper Mining Co. v. Office of Surface Mining Reclamation & Enforcement, No. DV-2012-1-R (Dep't of Interior Apr. 9, 2012) (noting that "during the pendency of this administrative proceeding, Farrell-Cooper will not have to comply with the NOV or take any corrective action"). Until the Department of Interior's hearing process resolves Farrell-Cooper's appeal, the company is not required to meet OSMRE's reclamation requirements. Farrell-Cooper similarly requested a stay of enforcement in its application for administrative review of the Liberty #6 NOV, and has not demonstrated or even claimed that a stay was denied in that administrative proceeding. See Coal. For Sustainable Res., 259 F.3d at 1249 (plaintiff has burden of establishing ripeness). Therefore, a delay in our review will not lead to hardship for Farrell-Cooper because the company is not faced with the choice of complying with OSMRE's challenged reclamation requirements or facing sanctions.

. . . a properly considered document are not well-pleaded facts that the court must accept as true." GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1385 (10th Cir. 1997).

Farrell-Cooper's arguments in favor of ripeness are unavailing. The company alleges generally that OSMRE's actions "are certain and final . . . [and] are not subject to any future contingencies or uncertainties[,]" but does not mention its ongoing administrative appeals or explain why those proceedings are not "future contingencies or uncertainties." Similarly, Farrell-Cooper claims that unless it obtains its requested relief, it "will necessarily be forced to violate the mandates of either Oklahoma or Federal authorities at its peril and stands to lose millions of dollars in having to redo its permitted reclamation" without considering that enforcement of OSMRE's challenged requirements is stayed during the pendency of its administrative proceedings.

We are referred to <u>Leedom v. Kyne</u>, 358 U.S. 184 (1958), for the proposition that "claims challenging administrative action in plain contravention of a statutory mandate justify judicial intervention prior to culmination of the agency's decision-making process." In <u>Kyne</u>, the Supreme Court held that the district court had jurisdiction to review an agency action because the agency did not contest that it had acted "in excess of its delegated powers and contrary to a specific prohibition." <u>Id.</u> at 187-88. However, the Court noted that the "absence of jurisdiction of the federal courts would mean a sacrifice or obliteration of a right which Congress has given" because the affected parties had "no other means, within their control, to protect and enforce that right." <u>Id.</u> at 190 (quotation omitted). In contrast, Farrell-Cooper is currently seeking review of the disputed OSMRE actions before the Department of the Interior. If that review vacates the contested OSMRE actions, Farrell-Cooper would receive the relief it seeks. Further, OSMRE has

-16-

not conceded that it acted in excess of its statutory authority. Kyne "provides an exception of very limited scope, to be invoked only in exceptional circumstances." Mobil Exploration & Producing U.S., Inc. v. Dep't of Interior, 180 F.3d 1192, 1201 (10th Cir. 1999) (quotations omitted). This case does not fall within the Kyne exception.

ODM also asserted a cross-claim against the Federal Appellees and appealed the district court's dismissal of its claim. ODM contends that even if we conclude that Farrell-Cooper's claims are not ripe for review, its claim is nonetheless properly before this court. We disagree.

In its answer and cross-claim, ODM sought a declaratory judgment concluding that ODM has sole and exclusive permitting authority under the Oklahoma program and that OSMRE's issuance of a TDN in this case, and its underlying justification, were unlawful. It also sought injunctive relief to maintain the status quo until the case is resolved. This requested relief would all be achieved if Farrell-Cooper's administrative proceedings succeed. Moreover, ODM's claim relies on the same disputed factual contention asserted by Farrell-Cooper. Finally, because OSMRE's enforcement proceedings are stayed during the pendency of Farrell-Cooper's administrative proceeding, ODM suffers no hardship from a delay in our review.

ODM argues that even with a favorable result from Farrell-Cooper's administrative proceeding, its injury would still exist because the injury to "Oklahoma's sovereignty" occurred "the moment OSMRE collaterally attacked the permit issued by ODM." We fail to understand how ODM's injury would remain if the Department of

-17-

Interior's review board agrees with ODM that OSMRE's "collateral attack was unlawful and wholly inconsistent with SMCRA's state-primacy based regulatory scheme."

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) (quotation omitted). Because both Farrell-Cooper and ODM's claims are conditioned on an ongoing administrative proceeding, and neither party faces harm as the proceeding progresses, we conclude that their claims are not ripe for review.

**III**

**DISMISSED**.