FILED
United States Court of Appeals
Tenth Circuit

August 16, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

SOUTHERN UTAH WILDERNESS
ALLIANCE; THE WILDERNESS
SOCIETY; NATIONAL PARKS
CONSERVATION ASSOCIATION;
SIERRA CLUB,

     Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR; UNITED STATES
BUREAU OF LAND MANAGEMENT;
AHMED MOHSEN, in his official
capacity as Color Country District
Manager,

     Defendants - Appellees,

and

STATE OF UTAH; GARFIELD
COUNTY,

     Intervenor Defendants - Appellees.

------------------------------

NATURAL RESOURCES AND
ADMINISTRATIVE LAW
PROFESSORS,

     Amicus Curiae.
_____

No. 21-4073

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:19-CV-00297-DBB)**

_____

Michelle White of Southern Utah Wilderness Alliance (Stephen H.M. Bloch of Southern Utah Wilderness Alliance, and Trevor J. Lee of Manning Curtis Bradshaw & Bednar PLLC, with her on the brief), Salt Lake City, Utah for Plaintiffs-Appellants.

James Maysonett, Attorney (Todd Kim, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, with him on the brief), Washington, D.C. for Defendants-Appellees.

Kaitlin T. Davis, Assistant Attorney General (Sarah Goldberg, Assistant Solicitor General, and Sean D. Reyes, Utah Attorney General, on the brief), Salt Lake City, Utah for Defendants-Intervenors-Appellees.

Hillary M. Hoffman of Vermont Law School, South Royalton, Vermont; Gregor MacGregor of University of Colorado Law School, Boulder, Colorado; and Eric Biber of Berkeley Law School, Berkeley, California, filed an amicus curiae brief for Plaintiffs-Appellants.

_____

Before **HOLMES**, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

The Burr Trail is a scenic 66-mile road across federal land located in Garfield County, Utah. In 2018, Garfield County sought to chip-seal a 7.5-mile portion of the Burr Trail known as the Stratton Segment.[1] Before Garfield County could begin its chip-sealing project, it was legally required to consult with the Bureau of Land

---

[1] Before the chip-sealing, the Stratton Segment was a gravel road. "Chip-sealing differs from asphalt or concrete paving in that it is a relatively low impact and low-cost surface treatment in which one or more layers of asphalt and fine aggregate are spread over a road, then rolled to make a smooth surface." R. vol. 1 at 186–87.

Management ("BLM") about the project's scope and impact and obtain BLM's approval. After doing so, Garfield County completed the project.[2]

Soon after Garfield County chip-sealed the Stratton Segment, SUWA[3] sued BLM and the United States Department of the Interior ("DOI"). Under the Administrative Procedure Act ("APA"), SUWA alleged that BLM had acted arbitrarily and capriciously when approving the chip-sealing project.[4] The district court disagreed and dismissed SUWA's claims.

On appeal, SUWA raises a single issue. It asserts that BLM acted arbitrarily and capriciously in determining that Garfield County holds an R.S. 2477 right-of-way over the Stratton Segment (and more broadly over the entire Burr Trail).[5] In support, SUWA reasons: (1) that BLM purported to apply the terms of an expired BLM

---

[2] Even before this project was completed, about 50 miles of the 66-mile trail had already been chip-sealed.

[3] As do the parties, we refer to "SUWA" collectively to include the Southern Utah Wilderness Alliance, the Wilderness Society, the National Parks Conservation Association, and the Sierra Club.

[4] Among the reasons SUWA objected to the chip-sealing project was that it would "increase noise and pollution" nearby. Appellant R. vol. 1 at 44. Yet as part of its prayer for relief in its federal complaint, SUWA requests that the district court order BLM and DOI to "remove the recently placed chip seal" from the Stratton Segment. *Id.* at 35; *see also id.* at 45 (requesting that the district court "direct[] BLM to tear up the chip seal").

[5] After considering the parties' positions, BLM concluded that "Garfield County is the holder of an R.S. 2477 [right-of-way] for the Burr Trail." Appellant R. vol. 1 at 203. Because this appeal concerns just the Stratton Segment, we decide only whether BLM rationally concluded that Garfield County holds an R.S. 2477 right-of-way over those 7.5 miles.

policy—Internal Memorandum ("IM") 2008-175—in making this R.S. 2477 determination, and (2) that BLM's findings didn't satisfy the IM's terms.[6]

We hold that BLM didn't act arbitrarily and capriciously in informally determining that Garfield County has an R.S. 2477 right-of-way over the Stratton Segment. After reviewing the record, we disagree with SUWA that BLM "purported to" rely on IM 2008-175 in its R.S. 2477 determination. Instead, BLM properly relied on its authority under our caselaw to informally determine, for BLM's own purposes, that Garfield County holds its asserted R.S. 2477 right-of-way. Thus, BLM's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.    Revised Statute 2477

In 1866, "Congress passed an open-ended grant of 'the right of way for the construction of highways over public lands, not reserved for public uses.'" *S. Utah Wilderness All. v. Bureau of Land Mgmt.* ("*SUWA v. BLM*"), 425 F.3d 735, 740 (10th Cir. 2005) (quoting 43 U.S.C. § 932, *repealed by* Federal Land Policy and

---

[6] As we understand it, SUWA concedes that BLM could have rationally approved the project had it not (supposedly) bound itself to IM 2008-175. At oral argument, SUWA's counsel stated that "[i]f it were the case that BLM had examined *Hodel*, and then examined which facts applied to the Stratton Segment, and concluded that those relevant facts under the current legal standard are sufficient to establish an R.S. 2477 right-of-way, that may be rational." Oral Argument Tr. at 7:09–7:31.

Management Act of 1976, 43 U.S.C. §§ 1701–1787). This statute is commonly referred to as "R.S. 2477." *Id.*

For 110 years, "R.S. 2477 was a standing offer of a free right of way over the public domain." *Id.* at 741 (internal quotations and citation omitted). The establishment of these rights-of-way required "no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested." *Id*. "The public need only accept it." *San Juan Cnty. v. United States*, 754 F.3d 787, 791 (10th Cir. 2014).

Then on October 21, 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA"). *SUWA v. BLM*, 425 F.3d at 741. FLPMA repealed R.S. 2477 and prohibited new R.S. 2477 rights-of-way after that date. *Id.* But FLPMA included a savings clause that preserved R.S. 2477 rights-of-way already in existence. *Id.*; *see also* 43 U.S.C. § 1769(a). Thus, after October 21, 1976, claimants may still claim a right-of-way under R.S. 2477 only by proving that the right-of-way had been established before then.

But establishing these rights-of-way has proven difficult. Given the lack of administrative formalities needed to create R.S. 2477 rights-of-way, "there are few official records documenting the right-of-way or indicating that a highway was constructed on federal land under" R.S. 2477. *Id.* (citation omitted).

## II.     *SUWA v. BLM*

In 2005, in *SUWA v. BLM*, we announced guiding principles relevant to this appeal. First, we observed that BLM lacked the "authority to make binding determinations" on R.S. 2477 rights-of-way. *Id.* at 757. We explained that such decisions are "a judicial, not an executive, function." *Id.* at 752. Thus, when a claimant seeks to conclusively establish title to an R.S. 2477 right-of-way, that party must sue under the Quiet Title Act, 28 U.S.C. § 2409a. *See United States v. Wells*, 873 F.3d 1241, 1260 (10th Cir. 2017) (collecting cases). But importantly, we advised that our decision did not "impugn[] BLM's authority to make non-binding, administrative determinations." *SUWA v. BLM*, 425 F.3d at 758. Indeed, we stated that BLM "has always had" the "authority" to determine "the validity of R.S. 2477 rights of way for its own purposes." *Id.* at 757.

Second, we required R.S. 2477 holders to consult with the appropriate federal agency and obtain its approval before making improvements "beyond mere maintenance" to their rights-of-way.[7] *Id.* at 748. Under this consultation requirement, the R.S. 2477 holder must: (1) advise "the federal land management agency of [such] work in advance"; (2) permit the agency a chance "to determine whether the

---

[7] Ordinarily, entities seeking to make improvements on federal land must obtain a Title V permit under FLPMA. The Title V permit process requires applicants to submit "plans, contracts, agreements, or other information reasonably related to the use, or intended use, of the right-of-way, including its effect on competition," to the Secretary of the Interior before the Secretary may grant, issue, or renew rights-of-way. 43 U.S.C. § 1761(b)(1).

proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976"; and (3) allow the agency the opportunity to study the "potential effects" of the improvements, and if needed, to "formulate alternatives" that protect the land. *Id.*

## III.    IM 2008-175

In response to *SUWA v. BLM*, BLM and DOI issued internal memoranda in March 2006, May 2006, and August 2008 advising their employees on how to implement our decision nationwide. One of those internal memoranda—IM 2008-175—figures prominently in SUWA's appeal.

IM 2008-175 is titled "Consultation Process on Proposed Improvements to Revised Statute (R.S.) 2477 Rights-of-Way." Appellant R. vol. 2 at 319. It declares that before the required consultation process can begin, "the validity of an asserted [right-of-way] must have been adjudicated by a Federal court or recognized by the BLM in an NBD [Nonbinding Determination]." *Id.* at 320.[8] By its own terms, IM 2008-175 was in force from August 8, 2008, until September 30, 2009.

---

[8] An earlier internal memorandum, IM 2006-159, which expired on September 30, 2007, sets forth a multistep process for BLM to follow in making NBDs. These steps include BLM reviewing "its public land records," visiting the right-of-way sites, and publishing its preliminary determination for public comment. Appellee R. at 41–42. No party argues that BLM used the NBD process in rendering its R.S. 2477 determination here. *See, e.g.*, Opening Br. at 8 n.6 ("BLM does not claim to have followed the NBD process here.").

## IV.    The Burr Trail

As mentioned, the Burr Trail is a 66-mile roadway crossing federally owned, scenic land in Garfield County, Utah. We have described the trail this way:

> Connecting the town of Boulder with Lake Powell's Bullfrog Basin Marina, the road at various points traverses across or next to unreserved federal lands, two wilderness study areas, the Capitol Reef National Park, and the Glen Canyon National Recreation Area. The trail has hosted a variety of uses: during the late 1800s and early 1900s to drive cattle, sheep and horses to market; around 1918 to facilitate oil exploration; and since the 1930s for various transportation, emergency, mineral, agricultural, economic development, and tourist needs.

*Sierra Club v. Hodel* ("*Hodel II*"), 848 F.2d 1068, 1073 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). The parties describe the Burr Trail as consisting of four segments.

This case concerns Garfield County's desire to chip-seal the Stratton Segment, a 7.5-mile portion of Segment 3. The Stratton Segment "begins at the eastern boundary of Capitol Reef National Park and . . . . is bounded on the east by the Mount Pennell Wilderness Study Area [] and on the west by the Long Canyon Land with Wilderness Characteristics [] Unit." Appellant R. vol. 1 at 19.

## V.    Factual Background

### A.    BLM's Proceedings for the Chip-Sealing Project

In 2009, Garfield County advised BLM of its plan to chip-seal the Stratton Segment. But Garfield County abandoned that proposed project. It lay dormant until 2018, when Garfield County revived its plan.

8

During the consultation process with Garfield County about the project, BLM prepared an initial environmental assessment of the chip-sealing project. In that assessment, in a single sentence, BLM determined that "Garfield County [] is the holder of an R.S. 2477 [right-of-way] for the Burr Trail, which crosses federal public lands located in Garfield County, Utah." Appellant R. vol. 1 at 190. After that, BLM reviewed each step of *SUWA v. BLM*'s consultation process and concluded that Garfield County had satisfied the requirements.[9]

On April 1, 2019, BLM released its initial environmental assessment and its finding of no significant impact on the environment ("FONSI") for public comment. On April 15, 2019, SUWA submitted comments challenging several aspects of BLM's environmental assessment.[10] SUWA's present appeal concerns only its first comment. There, SUWA contested BLM's determination that Garfield County has an

---

[9] First, BLM determined that Garfield County's chip-sealing project was "reasonable and necessary and, thus, within the scope of the [Garfield] County's [right-of-way] for the Burr Trail." Appellant R. vol. 1 at 191. Next, it considered whether the chip-sealing project would "adversely affect the surrounding public lands or resources and, if so, whether there are alternatives or modifications to the proposed improvement that would avoid or minimize such impacts." *Id.* BLM concluded that the chip-sealing project would have minimal adverse effects on the environment.

[10] In the same submission to BLM, SUWA argued: (1) that BLM had inadequately analyzed whether the chip-sealing project was "reasonable and necessary"; (2) that BLM needed to comply with the National Environmental Policy Act ("NEPA") and FLPMA regardless of whether Garfield County holds an R.S. 2477 right-of-way; (3) that the environmental assessment violated NEPA and FLPMA by failing to adequately analyze alternatives to the chip-sealing project; and (4) that in its environmental assessment, BLM did not take a sufficiently "hard look" at the chip-sealing project's environmental effects. Appellant R. vol. 1 at 203–05. These issues aren't raised on appeal.

R.S. 2477 right-of-way over the Stratton Segment (as part of the Burr Trail). SUWA argued that "for purposes of IM 2008-175," Garfield County holds no R.S. 2477 right-of-way over the Stratton Segment, because "[n]o federal court has ever quieted title to [Garfield] County for this stretch, nor has BLM recognized [Garfield] County's R.S. 2477 claim in an administrative NBD." Appellee R. at 65.[11]

On April 22, 2019, BLM drafted an internal memo evaluating whether Garfield County has an R.S. 2477 right-of-way for the Stratton Segment. The memo referenced several administrative and judicial decisions supporting its long-held view that Garfield County holds an R.S. 2477 right-of-way over the entire Burr Trail—and thus the Stratton Segment too. Among the referenced documents was a 1984 BLM letter advising that "Garfield County does have a right-of-way for this road [Boulder to Bullfrog] pursuant to the terms of Revised Statute 2477." Appellee R. at 24. Likewise, a 1987 BLM letter advised that "Garfield County does have a right-of-way for this road [Burr Trail] pursuant to the terms of Revised Statute 2477." *Id.* The internal memo also cited several judicial decisions supporting the agency's determination, including *Sierra Club v. Hodel* ("*Hodel II*"), 848 F.2d 1068 (10th Cir. 1988) and its underlying district-court decision, *Sierra Club v. Hodel* ("*Hodel I*"), 675 F. Supp. 594 (D. Utah 1987). Appellee R. at 25.

---

[11] On April 18, 2019, SUWA filed a supplemental comment asserting additional reasons to oppose the chip-sealing project. The reasons included BLM's alleged failing to take a "hard look at impacts to sensitive species," its failing to comply with its "[d]uties in Manual 6840," and its violating FLPMA's non-impairment mandate by approving the chip-sealing project. Appellee R. at 80–82. These issues are not raised on appeal.

On April 26, 2019, BLM created a two-page comment-and-response grid summarizing SUWA's comments and BLM's responses. Importantly, BLM rejected SUWA's position that Garfield County holds no R.S. 2477 right-of-way over the Stratton Segment. Though it didn't reference most of the supporting court and agency sources mentioned in its internal memo, BLM did recognize Garfield County's R.S. 2477 right-of-way over the Burr Trail based on *Hodel II*. Below is a copy of SUWA's comment and BLM's response on the R.S. 2477 issue:

| Comment | Response |
| --- | --- |
| SUWA 1<br>Garfield County does not hold an adjudicated R.S. 2477 right of way to any segment of the Burr Trail nor an administrative Non-Binding Determination from the BLM. | In *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), the Tenth Circuit Court of Appeals clearly stated that Garfield County is the holder of an R.S. 2477 right-of-way (ROW) for the entire 66-mile length of the Burr Trail. In particular, after discussing the uses of the Burr Trail beginning in the late 1800s, and the County's maintenance of the road beginning in the early 1940s, the court stated, "The combination of public uses and county maintenance has created a right-of-way in favor of Garfield County, pursuant to Congress' grant of public land in R.S. 2477." 848 F.2d at 1073. Further, the fact that the lawsuit, including the issues on appeal before the Tenth Circuit, concerned what improvements were within the scope of an R.S. 2477 ROW holder's rights, underscores that the court recognized that the County holds an R.S. 2477 ROW for the entire length of the Burr Trail. Based on the *Hodel* decision, the BLM recognizes that Garfield County is the holder of an R.S. 2477 ROW for the Burr Trail. |

Appellant R. vol. 1 at 203.

Later that same day, BLM notified Garfield County that it had completed the consultation process and authorized Garfield County to proceed with the chip-sealing project. Less than a week later, Garfield County began chip-sealing the Stratton Segment, completing the project in a few days.

## B.    District-Court Proceedings

In May 2019, SUWA sued BLM and DOI, alleging that BLM's approval of Garfield County's chip-sealing project violated the APA. Among other arguments,[12] SUWA contended that BLM had acted arbitrarily and capriciously in determining that Garfield County holds an R.S. 2477 right-of-way over the Stratton Segment under IM 2008-175.

The district court found no APA violation and dismissed SUWA's claims. SUWA now appeals a single issue: whether the district court erred by ruling that BLM did not act arbitrarily and capriciously in determining that Garfield County holds an R.S. 2477 right-of-way over the Stratton Segment.

---

[12] SUWA also argued: (1) that BLM had not sufficiently analyzed whether chip-sealing was "reasonable and necessary" in light of the traditional uses of the right-of-way, Appellant R. vol. 1 at 32; (2) that BLM had failed to "[a]dequately [a]nalyze [a]lternatives" to chip-sealing, *id.* at 32; and (3) that BLM had not taken a sufficiently "hard look" at the project's expected environmental impacts, *id.* at 34. These issues aren't before us on appeal.

## DISCUSSION

### I.    Reviewability of BLM's Right-of-Way Determination

Under the APA, we have jurisdiction to review final agency actions. *McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1253 (10th Cir. 2010) (citing 5 U.S.C. § 704). An agency action is final if it (1) marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1235 (10th Cir. 2013) (citation omitted).

Here, BLM's approval of the chip-sealing project was a final agency action. BLM's conclusion that Garfield County holds an R.S. 2477 right-of-way, that the project fell within the scope of the right-of-way, and that the improvement wouldn't significantly impact the environment marked the "consummation of the agency's decisionmaking process." *Id.* The decision was also legally consequential for Garfield County, given that BLM's conclusion allowed Garfield County to chip-seal the Stratton Segment. *See id.* Thus, because BLM's approval of the chip-sealing project was a final agency action, we may review "preliminary, procedural, or intermediate agency action or ruling not directly reviewable . . . on the review of the final agency action." 5 U.S.C. § 704. This includes BLM's conclusion that Garfield County holds an R.S. 2477 right-of-way over the Stratton Segment.[13]

---

[13] On appeal, the parties agree that we have jurisdiction to review this determination.

## II.    Standard of Review

We review de novo a district court's decision in an APA case. *OXY USA Inc. v. U.S. Dep't of the Interior*, 32 F.4th 1032, 1044 (10th Cir. 2022). We will set aside an agency's factual findings "only if they are unsupported by substantial evidence." *Id.* (quoting *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Ultimately, "[o]ur inquiry under the APA must be thorough, but the standard of review is very deferential to the agency." *Id.* (internal quotations and citation omitted). This means we may set aside an agency's decision only if it is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if it:

> (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*W. Watersheds Project v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013) (citation omitted).

## III.    BLM's Determination that Garfield County Holds an R.S. 2477 Right-of-Way Over the Stratton Segment

BLM cannot make "binding determinations" about R.S. 2477 claims. *SUWA v. BLM*, 425 F.3d at 757. But BLM "has always had" the "authority" to determine "the validity of R.S. 2477 rights of way *for its own purposes*." *Id.* (emphasis added).

Though SUWA doesn't dispute that BLM has this authority, it still argues that

BLM's decision was arbitrary and capricious. It does so based on its view (1) that

BLM purported to apply IM 2008-175 in its R.S. 2477 determination, but (2) that

BLM failed to meet IM 2008-175's requirements. *See* Reply Br. at 12 ("First, BLM

expressly purported to follow the process described in Instruction Memorandum

("I.M.") 2008-175."). But SUWA's argument rests on a faulty premise—our review

of the record reveals that BLM never bound itself to IM 2008-175 in making its R.S.

2477 determination.

Certainly, SUWA relied on the expired IM 2008-175 as circumscribing what

entities qualify for R.S. 2477 rights-of-way. *See* Appellee R. at 65. Its comment to

BLM's initial environmental assessment tracked IM 2008-175 in arguing that

Garfield County had neither "an adjudicated R.S. 2477 right of way to any segment

of the Burr Trial nor an administrative Non-Binding Determination from the BLM."

Appellant R. vol. 1 at 203.

But BLM never cited IM 2008-175 nor mentioned that expired policy's two

ways of determining R.S. 2477 rights-of-way. Instead, BLM informally determined

the right-of-way issue for its own purposes under *SUWA v. BLM*. It did so by relying

on *Hodel II*, which declared that Garfield County has an R.S. 2477 right-of-way over

the Burr Trail. *See Hodel II*, 848 F.2d at 1073 (stating that "Garfield County . . . has

maintained the Burr Trail since the early 1940s" which "has created a right-of-way in

favor of Garfield County, pursuant to Congress' grant of public land in R.S. 2477").

15

Though BLM solely cited *Hodel II* in its summary response to SUWA's comment to the environmental assessment, BLM reviewed other supporting sources in making its determination. This is demonstrated by BLM's April 22, 2019 internal memo on the R.S. 2477 issue, which references earlier BLM letters showing that BLM has "long taken the position that Garfield County holds an R.S. 2477 right-of-way" over the Burr Trail. Appellant R. vol. 2 at 437 n.94. Tellingly, as with its response to SUWA's comment, BLM makes no mention of IM 2008-175 in the internal memo. Nor does it do so in assessing the R.S. 2477 issue in its environmental assessment or FONSI.

Moreover, in the district court, BLM stated that it made its R.S. 2477 determination for its own purposes under *SUWA v. BLM*—not IM 2008-175. *See* Appellant R. vol. 2 at 358 (arguing in the district court that "BLM reasonably determined for its own internal purposes that Garfield County holds an R.S. 2477 right regarding the Burr Trail"). And BLM maintains that position on appeal. Federal Appellee Response Br. 17 (arguing on appeal that "BLM followed the process described by the Court in *SUWA v. BLM* and exercised the authority described in that opinion").

We thus reject SUWA's effort to treat BLM's citation to *Hodel II* in its response to SUWA's comment as silent recognition that *Hodel II* had "adjudicated" the right-of-way as contemplated by IM 2008-175.[14] In making its informal

_____

[14] We acknowledge SUWA's point that an "adjudication" under IM 2008-175 would likely require an R.S. 2477 claimant to bring a Quiet Title action. *See* Opening

16

determination for its own purposes, BLM cited *Hodel II* as support for its long-held view that Garfield County holds an R.S. 2477 over the Stratton Segment—nothing more.

We also reject any argument that by citing IM 2008-175 in the required consultation process, BLM bound itself to IM 2008-175 on the R.S. 2477 issue. It doesn't matter that the initial environmental assessment and FONSI reference IM 2008-175 regarding the consultation process.[15] BLM acted within its discretion in not applying IM 2008-175 to the R.S. 2477 issue.

In making its informal determination of Garfield County's R.S. 2477 right-of-way for BLM's own purposes, BLM rationally relied on *Hodel II*, which offered BLM this support: "Garfield County . . . has maintained the Burr Trail since the early 1940s. The combination of public uses and county maintenance has created a right-of-way in favor of Garfield County, pursuant to Congress' grant of public land in

---

Br. at 18 ("[A]n R.S. 2477 claim can be adjudicated only by a federal court properly exercising jurisdiction through the Quiet Title Act."). A prior internal memorandum attached to IM 2006-159 from the Secretary of the Interior noted that "if a claimant seeks a definitive, binding determination of its R.S. 2477 rights, it must file a claim under the Quiet Title Act, 28 U.S.C. § 2409a." Appellee R. at 34. But this doesn't matter here, because BLM didn't apply—and didn't have to apply—IM 2008-175 in determining the R.S. 2477 right-of-way.

[15] *See* Appellant R. vol. 1 at 185 ("Pursuant to Tenth Circuit case law and Instruction Memorandum (IM 2008-175), BLM needs to complete *the consultation process* on the proposed chip seal project because chip-sealing a hard-packed dirt or gravel R.S. 2477 ROW is an improvement to the ROW." (emphasis added)); *id.* at 190 ("Pursuant to Tenth Circuit case law and IM 2008-175, BLM needs to complete *the consultation process on the proposed chip seal project* because chip-sealing a hard-packed dirt or gravel R.S. 2477 ROW is an improvement." (emphasis added)); *id.* at 200 (same).

R.S. 2477." 848 F.2d at 1073. And *Hodel II* contains more statements supporting

Garfield County's R.S. 2477 claim: "We read the district court's opinion as finding

that sufficient use of the Burr Trail existed in 1934 to constitute an R.S. § 2477 right-

of-way . . . . We agree with that conclusion[.]" *Id.* at 1079 n.10; *see also Hodel I*, 675

F. Supp. 594 at 605 (district court finding that "the establishment and acceptance of

the Burr Trail as an R.S. 2477 right-of-way is supported by overwhelming evidence"

and that "Garfield County holds a valid right-of-way over the Burr Trail").

In sum, BLM acted rationally in relying on *Hodel II* (as well as its internal

documents and judicial decisions, though they are not needed here) to reach its

informal determination that Garfield County holds an R.S. 2477 right-of-way over

the Stratton Segment. Thus, BLM's determination was not "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.

§ 706(2)(A).[16]

## IV.    SUWA's Counterarguments

SUWA argues that even if BLM did not purport to follow IM 2008-175's

procedures, BLM's reliance on *Hodel II* is still arbitrary and capricious.

First, SUWA contends that the parties in *Hodel II* conceded the existence of

the right-of-way on appeal. *See* Opening Br. at 18–19; *see also* 848 F.2d at 1079

("On appeal, Sierra Club . . . now concedes the existence—but not the scope—of the

---

[16] We agree with SUWA that these statements from *Hodel II* aren't its holding. But that doesn't matter. BLM can rely on the statements as support for its informal determination for its own purposes.

County's right-of-way."). So, in SUWA's view, BLM could not have rationally relied on *Hodel II* to determine that Garfield County holds an R.S. 2477 right-of-way.

Second, SUWA argues that it was improper for BLM to rely on *Hodel II* because the case "involved neither findings of fact nor conclusions of law relevant to the Stratton Segment." Opening Br. at 19. In other words, because *Hodel II* did not involve the Stratton Segment, SUWA reasons that it would be arbitrary and capricious for BLM to conclude that Garfield County holds an R.S. 2477 over that portion of the Burr Trail.

Neither argument persuades us. Ultimately, BLM was free to use any of *Hodel II*'s conclusions to make informal determinations about Garfield County's R.S. 2477 claim to the Stratton Segment. Here, even if the existence of an R.S. 2477 right-of-way wasn't at issue, and even if the case involved Burr Trail sections other than the Stratton Segment, *Hodel II* states that Garfield County holds an R.S. 2477 right-of-way over the Burr Trail—without qualification. *See Hodel II*, 848 F.2d at 1073 ("The combination of public uses and county maintenance has created a right-of-way in favor of Garfield County, pursuant to Congress' grant of public land in R.S. 2477."). Given this plain statement, BLM did not act arbitrarily or capriciously in agreeing with that determination.[17]

---

[17] In its reply brief, SUWA argues—for the first time—that BLM's reliance on *Hodel II* would still be arbitrary and capricious because it applied an "outdated legal standard" to make its R.S. 2477 right-of-way determination. Reply Br. at 23. As we understand SUWA, because more-recent cases—*SUWA v. BLM* and *San Juan Cnty.*— adopted "modern legal standards" to determine R.S. 2477 rights-of-way, any reliance on decisions that predate those cases would be arbitrary and capricious. Reply Br. at

## CONCLUSION

For the reasons stated above, BLM did not violate the APA in concluding that Garfield County holds an R.S. 2477 right-of-way over the Stratton Segment. We affirm.

---

23. This argument fails for two reasons. First, we do not consider arguments raised for the first time in a reply brief. *Ferry v. Gonzales*, 457 F.3d 1117, 1129 (10th Cir. 2006). Second, we see nothing arbitrary and capricious about BLM's reliance on the *Hodel* decisions "for its own purposes." *SUWA v. BLM*, 425 F.3d at 757.